IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YOLANDA PARKER,
Petitioner,

vs.                                                        CASE NO: 8:06-cv-183-T-26EAJ

NANCY POTTER, et al.
Respondent.
_____/

## SECOND AMENDED PETITION AND COMPLAINT

COMES NOW the Petitioner, by and through her undersigned counsel, and would

file this, her Second Amended Petition and Complaint for Recession and for return of her

interest in the property and residence located at 281 Bayside Dr., Clearwater, FL. and

having a legal description as follows:

> LOT 8, BAYSIDE SUBDIVISION, NO. 4, according to the map
> or plat thereof recorded in Plat Book 32, pages 68 & 69, of the
> Public Records of Pinellas County, Florida.

for violation of 15 U.S.C.§ 1635 *et seq* by Respondents Potter, Money Consultants, Inc.,

and Dooley & Drake, P.A., and for Common Law Fraud, Fraud in the Inducement, and

Breach of Fiduciary Duty and would show:

## GENERAL ALLEGATIONS

1.     The Petitioner, YOLANDA PARKER, hereinafter the Petitioner, is the spouse

of Gary K. Parker.

2.     Respondent Nancy Potter, hereinafter POTTER, was the holder in due

course of the mortgage and promissory note.

3.     Respondent Clerk of the Circuit Court of the State of Florida for the Sixth

-1-

Judicial Circuit, in and for Pinellas County, Florida, is no longer a party to this action.

4.     Respondent Money Consultants, Inc., hereinafter MONEY, is alleged to be the party whom Gary K. Parker contracted to obtain the underlying promissory note and is alleged to be the party that discovered that the Petitioner had not signed the mortgage and that her signature was required to foreclose once the promissory note and mortgage was in default and is the party named on the original promissory note and the original mortgage, and is thus the "creditor" as that term is used in 15 U.S.C. Chapter 41 and 15 U.S.C. § 1602 (f).

5.     Petitioner was not involved in any way in the obtaining of the initial money, the signing of the promissory note or the giving of the mortgage, and has no direct knowledge as to those events.

6.     Respondent Dooley & Drake, P.A., hereinafter DOOLEY, is the entity that handled all documents between Respondents MONEY, POTTER, Petitioner and also Gary Parker.

7.     Gary K. Parker, without the knowledge or permission of the Petitioner, encumbered the marital property of the Petitioner through a promissory note and mortgage.

8.     This promissory note and mortgage was obtained on or about May 20, 2003, and was in favor of MONEY.

9.     This promissory note, in the approximate amount of $875,000.00, was used to pay off the original mortgage on the property in the approximate amount of $740,000 and to provide cash to Gary Parker.

10.    Since approximately 85% of the money obtained was used to pay off an underlying mortgage, this loan is covered the 15 U.S.C. Chapter 41, as a consumer credit

transaction and not as a business loan.

11.    Since the monies obtained were used to pay off an existing mortgage and not for the purchase or a new residence or for the construction of a new residence the loan was not a "residential mortgage transaction" as defined in 15 U.S.C. § 1602 (w) and  15 U.S.C. § 1635 applies to this transaction.

12.    On or about May 20, 2003, MONEY sold the subject mortgage to POTTER

13.    15 U.S.C. Chapter 41 does not contain a definition of the term "mortgage broker."

14.    Black's Dictionary defines a "mortgage broker" as a "person or firm who functions as an intermediary between a borrower and a lender in securing a loan."

15.    MONEY is alleged to be a "mortgage broker" pursuant to this definition in that it acts as an intermediary between individuals seeking financing and individuals seeking to loan money on real property since MONEY was the initial point of contact for Gary Parker in obtaining financing.

16.    DOOLEY is alleged to be a "mortgage broker" pursuant to this definition in this matter in that it acted as an intermediary between individuals seeking financing and individuals seeking to loan money on real property, since DOOLEY:

a.    Received and held the money for POTTER,

b.    Handled the closing of the loan between POTTER and Gary K. Parker,

c.    Disbursed the money to Gary K. Parker at the end of the closing,

d.    Contacted the Petitioner when her interest was discovered,

e.    Obtained the original mortgage document from POTTER for the Petitioner to sign, and

-3-

f.     Handled the signing of the "amended mortgage" by the Petitioner.

17.    POTTER is "creditor" as "creditor" is defined in 15 U.S.C. § 1602 (f) for the purposes of 15 U.S.C. Chapter 41since this mortgage was obtained through a mortgage broker, to wit, MONEY and/or DOOLEY.

18.    Specifically, POTTER paid to DOOLEY the sum of $875,000.00 for deposit into the trust account of DOOLEY and this sum of money to be used by MONEY and/or DOOLEY to finance a loan/mortgage to Gary K. Parker pursuant to a mortgage application that Gary K. Parker provided to either MONEY or DOOLEY or both.

19.    By these actions, where the money was deposited in the exact amount of the proposed loan and mortgage, POTTER availed herself of the use of MONEY and DOOLEY, and thus became a "creditor."

20.    The Petitioner is unaware of what documents may have been provided to her husband, Gary K. Parker, at his closing since said Gary K. Parker has never provided a copy of said documents to the Petitioner; however, based on the lack of action by Gary K. Parker in adopting the position of the Petitioner or joining the Petitioner in this action the Petitioner must assume, and for the purposes of this action would allege, that Gary K. Parker received the proper T.I.L.A. notices pursuant to 15 U.S.C. Chapter 41.

21.    There has been no allegation or evidence that the Petitioner was aware that Gary K. Parker obtained this loan prior to the contact by DOOLEY requesting that she sign the "amended mortgage."

22.    On or about August 1, 2003, Gary K. Parker failed to make a required payment and was in default under the loan, thereby placing the mortgage into default.

23.    Based on this default POTTER, MONEY and DOOLEY through parties

-4-

unknown, began to make preparations for a foreclosure action.

24.    During these preparations, parties unknown discovered that Gary K. Parker was married to the Petitioner.

25.    Upon discovering that the Petitioner was married to Gary K. Parker either MONEY and/or DOOLEY, as a representative of POTTER, contacted the Petitioner to obtain her signature on the mortgage documents.

26.    The Petitioner, at the request of MONEY and/or DOOLEY, responded to the office of DOOLEY and signed the "amended mortgage" documents on August 19, 2003, and within the last three years.

27.    Although the Petitioner was not at the closing between Gary Parker and MONEY, she would allege that this closing also took place at the office of DOOLEY since the same person notarized both her signature on the "amended" mortgage and Gary K. Parker's signature on the "original" mortgage.

28.    At no time was the Petitioner presented with any of the Truth In Lending Act (TILA) documents as required by 15 U.S.C. Chapter 41 by any representative of MONEY, DOOLEY or POTTER concerning her three day right to rescind her actions. See Affidavit previously filed.

29.    The only document received by the Petitioner was a document informing her that she was not accepting responsibility for the promissory note, but that her interest in the residence was being attached by the mortgage.

30.    Neither MONEY, DOOLEY or POTTER presented any notice of a "three day right of rescission" to the Petitioner at the time she signed the "amended mortgage."

31.    Neither MONEY, DOOLEY or POTTER presented any notice of a "three day

right of rescission" to the Petitioner at any time since she signed the "amended mortgage."

32.    On August 26, 2003, and 7 days after the Petitioner signed the document, POTTER, through DOOLEY, who was then acting as her counsel, declared Gary K. Parker in default on the mortgage and promissory note and declared the Petitioner in default on the mortgage.

33.    After a period of time in attempting to resolve the issue POTTER instituted foreclosure proceedings on January 20, 2004, in Pinellas County, Florida.

34.    All parties to this action are within the jurisdiction of this Court

35.    All actions have taken place within the jurisdiction of this Court.

36.    All conditions precedent have been met.

36.    This Court has jurisdiction based on the claims being made pursuant to federal law and specifically 15 U.S.C. Chapter 41.

37.    The right to rescind is a federal right in an area that has been preempted by federal law and as such preempts any action pursuant to state law, state common law or state tort law in conflict therewith. [See preemption in area of ERISA, which has similar statutory provisions. *Boulet v. Flour Corporation*, H-05-0105 (S.D. Tex 2005).]

38.    The property cited to above is the marital property of the Petitioner and Gary K. Parker and the homestead property of the Petitioner.

39.    The Petitioner, pursuant to Fla. Stat. 222.01 has filed a Declaration of Homestead with the Clerk of the Court for the Sixth Circuit.

## COUNT I - RESCISSION

40.    Petitioner YOLANDA PARKER sues Defendant POTTER for rescission, for return of her interest in the property and for attorneys fees and costs.

-6-

41.     Petitioner would reallege paragraphs 1 through 39 as though fully set out herein.

42. The Petitioner would allege that there is a connection between MONEY and DOOLEY since these parties appear to have acted in concert and interchangeably throughout this transaction.

43.     The undersigned did not represent the Petitioner at the time of the signing of the mortgage documents, at the time of the foreclosure proceedings or any of the subsequent actions until September 23, 2005.

44.     On January 20, 2005, the Circuit Court of the State of Florida for the Sixth Judicial Circuit, in and for Pinellas County, Florida, granted summary judgment of foreclosure to POTTER and against Plaintiff and Gary K. Parker.

45.     The undersigned filed his notice of appearance on behalf of the Petitioner on September 23, 2005.

46.     On September 29, 2005, and only six days after the undersigned began representation of the Petitioner, the Petitioner notified DOOLEY as counsel for POTTER, through facsimile and U. S. Mail, that pursuant to 15 U.S.C. § 1601, *et seq*, and 12 C.F.R.§ 226 the Petitioner was rescinding her actions. See Exhibit A.

47.     Pursuant to 15 U.S.C. § 1635 (f) this rescission was timely in that the Petitioner had three years from the date of her signing of the mortgage to rescind the transaction.

48.     As of this date neither DOOLEY, MONEY nor POTTER has responded to this Notice of Rescission by offering return of the Petitioner's interest in the property by "tak[ing] any action necessary or appropriate to reflect the termination of any security interest

-7-

created under the transaction."

49.     On January 4, 2006, pursuant to a *sua sponte* order, the Circuit Court of the State of Florida for the Sixth Judicial Circuit, in and for Pinellas County, Florida set a foreclosure sale date of February 6, 2006, on the above referenced property.

50.     On January 27, 2006, pursuant to a Motion of the Petitioner, the Circuit Court of the State of Florida for the Sixth Judicial Circuit, in and for Pinellas County, Florida, had a hearing on staying the foreclosure sale.

51.     At this hearing the undersigned argued for the Petitioner that the court could not foreclose on the Petitioner's interest in the subject property since she had rescinded her actions.

52.     At this hearing DOOLEY, acting as counsel for POTTER, did not argue that the Petitioner had ever received the T.I.L.A. notices, instead arguing that the Petitioner had waived her ability to rescind by not raising that issue prior to the Court entering summary judgment in January of 2005.

53.     At the conclusion of the hearing the court found that based on her failure to raise the claim of a right to rescind prior to the summary judgment hearing the Petitioner had waived her right to rescind.

54.     15 U.S.C. § 1635 places no such restriction on the ability of the Petitioner to rescind the transaction and, in fact, 15 U.S.C. § 1635 (i) specifically states that the right of rescission is available during foreclosure proceedings.

55.     As a result of this ruling, the property was sold a foreclosure, POTTER, taking possession of same.

56.     None of the exemptions set out in 15 U.S.C. § 1635 (e) apply in this action.

57.    The issue of rescission is a separate issue from the right to recover monetary damages.

58.    Petitioner seeks rescission and return of her property interest and does not seek monetary damages pursuant to 15 U.S.C. Chapter 41.

59.    Pursuant to 15 U.S.C. 1640 (a) (3) the Petitioner is entitled to her costs and fees for obtaining rescission.

60.    The Petitioner does seek tort damages against Defendants DOOLEY, MONEY and POTTER pursuant to the law of the State of Florida.

61.    The theory of detrimental reliance does not apply in this action since the theory of detrimental reliance has never been applied to violations of 15 U.S.C. § 1635 where the party seeks only recession and compliance with 15 U.S.C. § 1635 (b) and not those monetary damages set out in U.S.C. § 1640.

62.    The theory of equitable subrogation, as discussed in Bynum v. Equitable Mortgage Group, Civ. 99-CV-22660-SBC-JMF (DDC April 2005) does not apply to this matter.

63.    In order to obtain equitable relief the party seeking equity must come to the Court with "clean hands."

64.    The actions of Respondents in seeking to have the Petitioner sign the Mortgage, knowing that said mortgage was already in default for non-payment, constitutes bad faith and removes their "clean hands" as to the signing of that document.

65.    Under 15 U.S.C. Chapter 41 (T.I.L.A.) the Petitioner had the right to rescind and she could only lose this right under the statutory scheme by selling the property or being presented the "notice" documents by MONEY, DOOLEY or POTTER.

66.     The granting of a summary judgment in the foreclosure action did not waive or curtail her right to rescind at any time up until the actual time of sale.

67.     Pursuant to 15 U.S.C. § 1640 (a) (3) the Petitioner is to be awarded her reasonable attorneys fees and costs if she is successful in obtaining rescission.

68.     15 U.S.C. § 1640 (e) places a one year limitation on the award of damages, but said damages did not arise until 30 days after the Petitioner filed her notice of rescission and the Defendants failed to rescind the mortgage as to Petitioner, therefore the claim for attorneys' fees and costs is made within the applicable statute of limitation time frame.

WHEREFORE Petitioner YOLANDA PARKER demands a judgment against POTTER wherein the Petitioner's property interest in the subject homestead property would be returned to her and for an award of attorneys' fees and costs as permitted under the Code.

## COUNT II - COMMON LAW FRAUD

69.     Petitioner/Plaintiff PARKER sues Defendants DOOLEY, MONEY and POTTER for $630,000.00 for common law fraud.

70.     Petitioner/Plaintiff PARKER would reallege paragraphs 1 though 39 as though fully set out herein.

71.     The elements of common law fraud are (1) the defendant made a representation; (2) that representation was material to the agreement; (3) the defendant had actual knowledge that this representation was false, or acted with reckless indifference to its truth; (4) the defendant's intent was to mislead the individual; (5) the individual was justified in relying on the defendant's representations; and (6) the individual's damages

-10-

were the proximate result of the defendant's conduct.

72.    In this matter all such elements are met as to POTTER, DOOLEY and MONEY's actions towards the Petitioner.

73.    At the time that the Petitioner was asked to sign the mortgage document the Defendants made a representation as to the validity and good standing of the agreement by the mere presentation of the contract to the Petitioner for signature.

74.    The fact that the contract was in good standing was material to the agreement of the Petitioner to sign the same as she would never have entered into a contract that was in default.

75.    The Defendants, DOOLEY, MONEY, and POTTER are all alleged to have had personal and specific knowledge that at the time that Petitioner signed the "amended mortgage" the mortgage was in default.

76.    The intent of DOOLEY, MONEY and/or POTTER was to mislead the Petitioner as to the status of the mortgage contract since these parties knew that if the Petitioner did not sign the "amended mortgage" they would not be able to recover on the underlying note through foreclosure on the homestead of the Petitioner.

77.    When a person in Florida is dealing with a person licensed by the State, "they may naturally assume that the [individuals] they are dealing with possesses the requisites of an honest, ethical man." Bush v. Palermo Realty, Inc., 443 So. 2d 104 (Fla. 4th DCA 1983).

78.    In this case the Petitioner was dealing with a member of the bar and a licensed mortgage broker and had no reason to believe that they would present a contract that was already in default for her to obligate herself upon.

-11-

79.    Additionally, the Petitioner was justified in relying on the representations of the Defendants based on the fact that the document was signed in a lawyer's office and lawyers are bound by a code of ethics to all parties, not just their clients.

80.    The fraud of the Defendants is the proximate cause of the damages that the Petitioner has suffered since the contract was already in default at the time that she signed the mortgage and the payments were never brought current after she signed the contract.

81.    As a result of the fraud of Defendants DOOLEY, MONEY and POTTER, the Petitioner has lost her marital residence and homestead rights to the above-identified property.

82.    At the time of the foreclosure the marital residence had a market value of $2,000,000.00 and POTTER had a claim against the Petitioner only as to the amount of the underlying mortgage that POTTER's money paid off, which was in the amount of $740,000.00.

83.    The Petitioner thus had an interest in the martial residence in one-half of the difference between the market value and the underlying mortgage, or $630,000.00.

WHEREFORE, Petitioner demands judgment against POTTER, DOOLEY and MONEY and each of them individually in the amount of $630,000.00 plus attorney's fees and costs.

## COUNT III, FRAUD IN THE INDUCEMENT

84.    Plaintiff sues Defendants POTTER, DOOLEY and MONEY in the amount of $630,000.00 for fraud in the inducement.

85.    The Petitioner would reallege paragraphs 1 through 39 as though fully set out herein.

86.     The elements of fraud in the inducement are (1) a misrepresentation of a material fact; (2) the defendant knew or should have known of the statement's falsity; (3) the defendant intended that the representation would induce individual to rely and act on it; and (4) the individual suffered injury in justifiable reliance on the representation.

87.     The Defendants misrepresented a material fact when they requested and required the Petitioner to join into a contract that had already been breached.

88.     The Defendants knew or should have known that the contract (mortgage) had been breached by Gary K. Parker not paying the monthly payments in a timely manner.

89.     The Defendants intended that their representation that the contract (mortgage) was still valid would induce the Petitioner to sign the contract since if she did not sign the contract they would not be able to foreclose on her interest in the marital residence and her homestead.

90.     Based on the Defendants' representation that the mortgage was still in good standing, the Petitioner signed the contract.

91.     At the time of the foreclosure the marital residence had a market value of $2,000,000.00 and POTTER had a claim against the Petitioner only in the amount of the underlying mortgage that POTTER's money paid off in the amount of $740,000.00.

92.     The Petitioner thus had an interest in the martial residence in one-half of the difference between the market value and the underlying mortgage, or $630,000.00.

WHEREFORE, Petitioner demands judgment against the Defendants, and each of them individually in the amount of $630,000.00 plus fees and costs.

## BREACH OF FIDUCIARY DUTY

93.     Petitioner sues Defendants DOOLEY and MONEY for breach of fiduciary

-13-

duty.

94.     Petitioner would reallege paragraphs 1 through 39 as though fully set out herein.

95.     The elements for breach of fiduciary duty are (1) the existence of a fiduciary duty, and (2) the breach of that duty such that it is the proximate cause of the individual's damages, and (3) damages.

96.     When a person in Florida is dealing with a person licensed by the State, "they may naturally assume that the [individuals] they are dealing with possesses the requisites of an honest, ethical man." Bush v. Palermo Realty, Inc., 443 So. 2d 104 (Fla. 4th DCA 1983).

97.     In this case the Petitioner was dealing with a member of the bar and a licensed mortgage broker and had no reason to believe that they would present to her a contract that was already in default for her to obligate herself upon.

98.     Defendants DOOLEY and MONEY knew or should have known that by the mere presence of their agents at the signing, and the signing being conducted in the offices of an established law firm, the result would be that the Petitioner would believe that she was dealing with honest, ethical individuals.

99.     Contrary to this belief, Defendants DOOLEY and MONEY knew or should have known that they were acting in an unethical and dishonest manner by not informing the Petitioner of the fact that the mortgage was in default at the time she signed the "amended mortgage."

100.    At the time of the foreclosure the marital residence had a market value of $2,000,000.00 and POTTER had a claim against the Petitioner only in the amount of the

underlying mortgage that POTTER's money paid off in the amount of $740,000.00.

101.    The Petitioner thus had an interest in the martial residence in one-half of the

difference between the market value and the underlying mortgage, or $630,000.00.

WHEREFORE, Petitioner demands judgment against Defendants DOOLEY and

MONEY in the amount of $670,000.00, plus fees and costs.

## PLAINTIFF DEMANDS A JURY TRIAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was mailed to CHRISTOPHER

MORRISON, Esq., counsel for Respondent POTTER, and delivered to a process server

for service on the registered agents for Dooley & Drake, P.A. and Money Consultants, Inc.

on this, the _____ day of March, 2006.

JEFFREY A. BLAU, Esq.
213 E. Davis Blvd.
Tampa, FL. 33606
(818) 254-6906
(813) 254-6891 Facsimile
Fla. Bar NO: 256897